And good morning to everyone. I see four lawyers. We have four on the first case this morning, so let's get started. Can you all hear me? Yes. All right. That's good. Our first case this morning is Bennett v. Council 31 of AFSCME. Mr. Schwab. Thank you, Your Honor. Good morning. Good morning, opposing counsel. My name is Jeffrey Schwab, and I represent the plaintiff appellant Susan Bennett. May it please the court. This case presents two issues for this court to decide. The first issue is whether the plaintiff provided affirmative consent to waive her First Amendment right not to pay money to a union as articulated by the Supreme Court in Janus when she signed a union membership card and a dues deduction authorization prior to the court's decision in Janus. The second question is whether the defendants violated plaintiff's free speech rights and free association rights by granting a labor union the power to speak on plaintiff's behalf as her exclusive representative to the public employer even though she is no longer a member of the union. Mr. Schwab, good morning. This is Judge Rovner. Good morning, Judge Rovner. For me, the obvious question off the bat is why is Bennett being forced to associate with the union? She doesn't have to pay the union dues. She doesn't have to sign a membership form and become a member. She can pick it outside the workforce with signs or wear a button that says I don't like the union. It doesn't represent my ideas. Where's the forced association here? Thank you, Your Honor. Well, she is being forced to have the union represent her and her interests when the union basically collectively bargains with the government. Or as Janus recognized, collective bargaining is similar to lobbying. So she's being forced to associate with a political organization that's lobbying on her behalf for things that she may not agree with. So she does not want to associate with the group that's lobbying for her for things that she may not want. Go ahead. If I didn't vote for the person who represents me in Congress and that person purports to represent all of the people in their district, is that forced association? Well, I think that's a little bit different because we're talking about a government representative and that's a state rep or a federal representative whose job it is under our system of government to represent the people in his district. What we're talking about here is a private party who lobbies the government on your behalf even with things that you don't agree with. So a more apt analogy, I think, would be forcing all gun owners to associate with the NRA and have the NRA lobby on their behalf for all gun owners rather than the example that you provide. Okay. So suppose a young person hears that the United States is about to impose a draft. He signs up for an officer training program on the assumption that he will get a better assignment if he volunteers than if he's drafted. He signs a contract obligating him to a certain amount of time in service, gets the benefit of the training program, the education, a better assignment, then he finds out that the law has changed and at his age he no longer could have been conscripted. Under your theory that had he known at the time that he couldn't be conscripted, he would not have joined. So can he renege on his contractual obligation to the military? Hello? Mr. Schwab, are you still there? Mr. Schwab? Looks like we've lost Mr. Schwab. Yeah, it looks like we've lost Mr. Schwab. I did pause the timer. We're going to try to get him connected right now. Okay, thank you. Mr. Schwab, were you able to hear my question? I'm sorry, Your Honor. I apparently got kicked off the Zoom call for a second here. I think that I understood your question to be about a person that signs up for the military when he understood there to be a draft. Right. And the law changed. Right. Okay. Can a person like that renege on his contractual obligation to the military? I don't know the answer to that, but I guess I would push back on the analogy I think that you're making with the first question that this case brings up, and that is whether Ms. Bennett is forced, can be forced to pay, or actually more accurately, whether the government can withhold union dues from Ms. Bennett's paycheck without her affirmative consent. And I guess what I would say is that in this case, we're not challenging the contractual arrangement. We're challenging the government system whereby the school district in this case withholds money, dues, from Ms. Bennett's paycheck without her affirmative consent, based on nothing more than the union say so. And in this case, it's a little bit different because she's not saying that she has the ability to renege on her contract. What she's saying is that at the time that she signed the union card, you can't assume that the union membership card is what Janice requires as affirmative consent because Janice requires a waiver. And part of waiving one's constitutional rights requires that that person know that they're waiving their constitutional rights. And obviously, Ms. Bennett could not have known that she was waiving her constitutional rights at the time because Janice wasn't yet decided. And furthermore, another reason why she couldn't have waived her constitutional rights was because she couldn't freely choose to not pay the union. She had to pay the union regardless. And the right that we're talking about is the right not to have union money, I'm sorry, money taken from your paycheck and given to the union. So I guess I'm sorry I didn't answer your example, but I guess what I would say is I don't think that example is consistent with the situation in this case. You know, that her consent could not have been knowing because she didn't know about Janice. And under that theory, consent can never be knowing except for people who own crystal balls, seems to me. Well, I think it could be. I mean, obviously, it can be known now, now that Janice is decided. And I think what you're speaking to is the issue of what seems a little bit unfair that this knowing requirement is being pushed back in time. And I guess what I would say to that are two things. One is that the Supreme Court has consistently recognized that its opinions on statutes and constitutional issues are retroactive. But secondly, if one is concerned about that effect, I think that your honor can look to Janice too, which is this court's decision on Mr. Janice's ability to get his union agency fees back and say that in that case, any agency fees, in that case, agency fees taken before Janice were protected by a affirmative defense based on a fairness argument. And in this case, while we don't concede and I don't want to waive my right to challenge that I think Janice too was wrongly decided, Janice too certainly applies to this panel. And so if one's concerned about going back in time in the fairness of that, you can still rule in my favor and allow the defendants to have affirmative defense for damages before Janice so that only damages after Janice when obviously they should have received her affirmative consent. And if she would have signed something, then they might have argued that she knew of her right. They're basing taking the union dues after Janice on something she signed before Janice, which by definition she can't have known and she can't have waived that right. So I think if one's concerned about the fairness of taking union dues back in damages from before, I think Janice too provides a response to that fairness argument. Mr. Schwab, this is Judge Fong. Is your argument basically that the district court didn't apply the Janice waiver correctly? Yes, your honor. I think that's correct. And if I could take you to the language in Janice where I believe... Well, let me just before you do that. Sure. So that I understand. The union and the school district suggest that you're going to with the third and the ninth circuits. Now, what's your response to that, that this issue has already been addressed by those two circuits? It has in both the third and ninth circuits. The third circuit decision in Oliver was issued as I believe non... I forget what the term is, but it wasn't a published opinion, I believe. And I guess what I would say is I think that the ninth circuit got it wrong and I can explain why I think that. And I think... Well, yeah. And would you also acknowledge that the district courts that have addressed this and understanding that it's the district court decisions have not come out in your favor as far as interpretation of the waiver? Yes, that's true too. So to your position at this point, subject to our accepting it, is a standalone position. Is that correct? There's no court authority to help us in regard other than that it makes an analysis other than yours. Yes, except for I think my point is that I think Janice does if you'd like. Sure. So if I could take you to in the opinion, page 240... I'm sorry, 2486. This is the section seven. This is the last section in Justice Alito's opinion. And I view this section to be sort of the most important section. This is where you would refer your law students to if you wanted to get the answer to what Janice was about. And there's four paragraphs. The first two, I think, are the most important. The first paragraph is the ruling. It says a boot is overturned and it says that you can't take agency fees without consent. And then it explains why. It says that violates these employees' First Amendment right. And then after that, there's a paragraph and there's three sentences. And I think these three sentences are the most important sentences in Janice for this particular case. It says, neither an agency fee nor any other payment to the union may be deducted from a non-member's wages, nor may any other attempt be made to collect such a payment unless the employee affirmatively consents to pay. By agreeing to pay, non-members are waiving their First Amendment rights. And such a waiver cannot be presumed. Rather, to be effective, the waiver must be freely given and shown by clear and compelling evidence. Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met. So the first thing I want to point out is that the union and other defendants, they graft onto this word non-member. It says non-member twice. It says non-member's wages. And it says by agreeing to pay, non-members are waiving their First Amendment rights. And they say, well, see, this doesn't apply to Bennett. This applies to non-members like Mark Janice. The problem with that argument is, of course, what we're talking about is whether the union card and the dues deduction authorization, whether those documents are sufficient to waive Ms. Bennett's rights. When Ms. Bennett signed those documents, she was a non-member. And so this section of Janice, I think, applies to her. Furthermore, in the second sense, it says by agreeing to pay, non-members are waiving their First Amendment rights. Well, that can't apply to people in Mr. Janice's position because Mr. Janice never agreed to pay anything. So this section doesn't apply to people in Mr. Janice's position. It applies to people who agreed to pay money to the union. And what it says is, by agreeing to pay, those non-members are waiving their First Amendment rights. And therefore, they have to go through a procedure. They have to show that because the waiver can't be presumed, they have to show that the waiver was freely given, and they have to show there's clear and compelling evidence for the waiver. And Ms. Bennett, who was a non-member when she signed the dues deduction authorization, she did not freely give her authority to take union dues because she couldn't have. Union money was taken from her either as a member or as a non-member. And therefore, she could not have waived her First Amendment rights under Janice. And that's why I think she has a claim under our first question. Now, I see that my time for rebuttal, I'm in my time for rebuttal, so I'd like to reserve the rest of my time for rebuttal. That's fine. Thank you. Thank you. Mr. Karabel. Thank you, Chief Judge Sykes, and good morning. My name is Jacob Karabel, and I represent the union at Paulese. I will be addressing the common issues in the brief that the union filed jointly with the school district after me. Counsel for the school district will briefly address the arguments specific to them, and then counsel for the state defendants will address plaintiff's challenge to exclusive representation. I'd like to start with count one of plaintiff's complaint, and specifically the question of whether plaintiff has shown that her constitutional rights were violated when union dues were deducted from her paychecks. As Judge Flom alluded to earlier, a lot of courts have considered this very question since the Supreme Court's Janice decision in 2018. I count more than 20, and every one of those courts, including the district court below, and since then, decisions from the Third and the Ninth Circuits have held that it does not violate the First Amendment in a circumstance like this one, when union dues are deducted from an employee's paycheck pursuant to the clear terms of a union membership agreement. And there's a good reason why the courts are in agreement on this. It's not as though these cases sort of rose out of a vacuum, and the reason for that, the fountainhead for these decisions, is the Supreme Court's decision in the Cohen versus Cowles media case, where in Cohen, the court held that it did not violate the First Amendment to enforce an agreement between a political operative and newspaper reporters, even though that agreement clearly restricted the newspaper's First Amendment right to publish newsworthy information. And the reason why the Cohen court held that there was no had agreed was self-imposed. Enforcement of that restriction was an application of generally applicable state law. That is the case here as well. Plaintiff acknowledges, as she must, that she chose to join the union and chose to sign the union membership agreement rather than, as Mr. Janice did, exercise her right not to join the union. She also acknowledges that she received consideration for agreeing to join the union in the form of various membership benefits, including, for example, the right to vote on the ratification of collective bargaining agreements, which is a right that she exercised even after Janice in August of 2018. The payment terms, the dues deduction commitment that plaintiff agreed to in exchange for receiving these benefits, those terms were self-imposed, just as the reporter's promise in the Cohen case was self-imposed. And plaintiff does not dispute, and Mr. Schwab made this clear in his opening presentation, that this is a contract that's enforceable under principles of Illinois law, just as the newspaper reporter's promise in the Cohen case was enforceable under generally applicable principles of Minnesota law. I'd now like to address the plaintiff's argument that the Supreme Court's Janice decision is what governs here and what requires a different result. As this court recognized in its Janice decision on remand from the Supreme Court, Janice was a case about the compelled subsidization of private speech, because Mr. Janice, who had exercised his right not to join the union, nonetheless had agency fees deducted from his paycheck against his will. And this is why the Supreme Court throughout the Janice opinion repeatedly emphasizes that Mr. Janice had not joined the union and that he had never in any way consented to pay agency fees before they were deducted from his paychecks. This, in contrast, is not a case about compelled speech. As I mentioned, plaintiff chose to join the union, and as part of that membership commitment, consented to have annual dues deducted from her paycheck. So she's situated entirely differently from Mr. Janice and other non-members whose agency fees were challenged in Janice, as well as in the Supreme Court's earlier agency fee cases like Knox and Harris v. Quinn. When you have a contract like this, the applicable line of cases is not the Janice line, but Cohen and the other contract cases that we cite in our brief, like for example, this court's decisions in the Hawkins case and the Kovaleski case, where the court held that an arbitration clause in a contract between private parties in and of itself waived the plaintiff's constitutional rights to a jury trial and a right to petition the courts. In fact, I'm sorry, Judge Rovner, did you have a question? No, I can't. I'm sorry. So, and in those cases, in Hawkins and Kovaleski, the arbitration cases, there are even stronger arguments than there is here that those contracts should be set aside as inconsistent with the First Amendment. In Kovaleski, for example, the plaintiff was required to sign the arbitration clause as a condition of her employment. And in Hawkins, the plaintiff signed an open contract that did not even contain an arbitration clause. At the time the plaintiff signed it, that was amended later by the members of the insurance in that case. Yet despite those facts, this court held that enforcement of those contracts did not violate the plaintiff's constitutional rights, simply stating that the contractual provision in and of itself waived those rights. And we would submit that the same result follows here. I also wanted to address plaintiff's related argument that the deduction of dues violated the Supreme Court, decided Janus. Mr. Schwab made this argument in his presentation. I would also note that this is the only ground on which, in Ms. Bennett's reply brief, she distinguishes this court's Hawkins case. I think for at least two reasons that argument doesn't work. First, you know, when Ms. Bennett became a public employee, she was presented with this decision of whether do I exercise my right to join the union or do I exercise my right not to join the union. And so, you know, Ms. Bennett chose that former option. Mr. Janus chose that latter option. And the constitutional right not to join a union, as this court recognized in the Hallinan decision, was recognized long ago, back in 1977, at least, when the Supreme Court decided to abode. So that was a known right and a clear choice the plaintiff had, you know, going back to 2009, as well as in 2017, when she signed the revised membership agreement. And the critical point in the Ninth Circuit made this point in the Belgao case, as well as the Third Circuit, that choosing to pay union dues cannot be decoupled from the decision to join the union. The Supreme Court made a similar point in the Harris versus Quinn case, when the court said, you know, it can be presumed when you have a union that's an exclusive representative, that a high percentage of bargaining unit members became union members and are willingly paying union dues, that one is essentially part and parcel of the other. So we would submit that this court should follow the unbroken line of authority that now includes two circuits, that the First Amendment somehow required plaintiff to a union, which, you know, has the dues commitment. The second reason why plaintiff's Janus argument fails is that it's well established that changes in the law, even changes in the constitutional law, do not permit a court to invalidate a contract on the ground that one of the counterparties to the contract, in retrospect, wouldn't have entered into the deal if they had known about the change in the law at the time the contract was signed. This is clear from, among other cases, the Supreme Court's decision in the Brady case, where the court, in holding that a plea bargain was voluntary and thus not a constitutional violation, held that a plea agreement made in light of the then applicable law cannot be set aside because the plea rested on a faulty premise. And this court has issued several decisions reinforcing Brady, including the Bones case that we cited in our brief, which is the case that the Third Circuit very recently quoted at length in the Fisher decision in rejecting the very same argument that plaintiff is making here. That's the case that we submitted in our 28-J letter a couple of weeks ago. Mr. Carabell, what about these escape period restrictions? Is it unconstitutional to require someone to continue to pay dues until the escape period opens? I mean, suppose a union decides to affiliate itself with Ku Klux Klan. Shouldn't employees be permitted to withhold financial support immediately? So the particular sort of window period, the 15-day window period on Ms. Bennett's card, that's a focus of the amicus brief here. Plaintiff, as I read her complaint in her briefs is not challenging that period on the ground that it violates the Constitution because 15 days is too short or something like that. But as to the broader point, I would say that when an individual enters into an agreement with any private membership association, union or otherwise, and as part of that agrees to pay dues, that agreement is enforceable and does not violate the Constitution. Here, she agreed to this one-year dues commitment that was only revocable in an annual period. She received benefits in exchange for that. And as the Supreme Court said in the Granite State case that we cited in our brief, the general rule of voluntary associations is that individuals can join and resign as they see fit, subject, of course, the court said, to pay any financial obligations that were due in owing. And that's exactly what happened here. Ms. Bennett did resign her union membership a few months before her window period came up, and she was able to stop the dues deductions. That's a right that she has under state law to resign her union membership at any time. But for purposes of the First Amendment, you know, enforcement of an agreement like this, you know, does not pose a constitutional problem. So I mentioned the Brady and the plea bargaining cases on the change in law point. I did want to, I see my time is running short, briefly just mention we do have an alternative ground for affirmance. The district court didn't feel the need to reach it, which is the state action question and whether the union's actions here in enforcing the dues deduction agreement as part of the membership contract can be attributed to the state. I would just say that the Ninth Circuit resolved the claim against the union. In the Belgao case, we would submit that the Belgao decision is persuasive on this point. But again, the court does not need to reach the state action question if it does what the district court did and, say, assumes state action. There's simply no First Amendment problem enforcing this type of agreement. There's also the exclusive representation count. I'm happy to take questions on that, but I know the counsel for the state defendants will be focusing on that as well in his five minutes. So if the court has no further questions, we would simply ask that the district court's judgment be affirmed. Thank you. Thank you. Mr. Manning. Thank you, Chief Judge, and may it please the court. Good morning. My name is Jason Manning. I represent Apele Moline Cove Valley School District Number 40. I would like to focus briefly on one issue this morning, and it's an alternative basis similar to the state action argument the counsel just outlined, and that is the lack of any official policy or practice of the school district that approximately caused any alleged constitutional harm in this case as acquired by the Supreme Court's decision in Monell. Plaintiff does not challenge in this case the authority of the school district to deduct union dues from the paychecks of union members under the Constitution. Rather, the essence of her claim is centered solely on her decision and consent to join the union and sign her membership and dues deduction card, not in any policy of the school district. We see this in Plaintiff's own words in her framing of issue on Apele in pages 1 and 11 of her brief and page 2 in her reply. But importantly, Plaintiff concedes, as she must, that the school district did not and could not play any role in her decision to join the union and sign her card and that the district had, quote, no role, authority, or discretion regarding union membership, the amount of dues deductions, or the opt-out window, unquote. Those are paragraphs 12, 15, and 31 of the party's stipulated record. Those admissions are fatal to Plaintiff's claim against the district, even if she could identify a constitutional harm here, which she cannot. Under this court's decision in Straus, Monell requires both the government policy and proximate cause between that policy and an alleged harm. Neither are present here. The district's role, as with the city in this court's Hallinan decision and the state in the Supreme Court's Blum decision, was simply to implement a private decision here, the union membership decision. For these reasons, we respectfully request that the district court's decision be affirmed. Thank you. Thank you. Mr. Bichette. May it please the court, my name is Frank Bichette. I represent the state defendants' appellees. I will be discussing count 2 of Bennett's complaint, which challenges the constitutionality of a system of exclusive representation in the Illinois Educational Labor Relations Act. This court should affirm the dismissal of that claim because this court has already upheld the constitutionality of exclusive representation in Hill pursuant to the Supreme Court's decision in Knight. In Hill, this court upheld the constitutionality of exclusive representation in the parallel statute, which is the Illinois Public Labor Relations Act. And in doing so, this court recognized that Knight had held a similar exclusive representation statute to not violate the First Amendment. And consistent with other circuits, this court reasoned that Harris, which struck down fair share fees as to that group of employees, did not affect Knight because that issue was limited to the issue, or that decision was limited to the issue of fair share fees. And then finally, this court noted that Knight accorded with broader First Amendment principles because it was unlike those statutes that the Supreme Court had struck down as violating the freedom not to associate. Bennett raises the same challenges and presents the same arguments that this court rejected in Hill. Like the Hill plaintiffs, Bennett argues that exclusive representation is subject to exacting scrutiny and cannot satisfy that standard. And again, like the Hill plaintiffs, Bennett argues that Knight is distinguishable because she has a different motivation for the plaintiffs in Knight. This court, however, should adhere to its precedent and again, reject those arguments. Although Hill is directly on point, Bennett has not asked this court to overrule that decision, thus forfeiting the point. And in any event, none of the accepted bases for overruling precedent are present here. And we would have to separate ourselves, not only from ourselves, but from the 1st, 2nd, 3rd, 6th, 8th, 9th circuit, not to speak of the Supreme Court. Exactly, Your Honor. Far from being a minority among the circuits, this court has reached the same decision as every other court that has considered this issue. Everyone has agreed that exclusive representation is constitutional under Knight. The Supreme Court has not issued a decision since Hill on an analogous matter that compelled reconsideration. Janice did not mention Knight. And Janice actually confirmed that exclusive representation by itself is permissible and that states can keep their labor relations systems exactly as they are with the sole exception of fees. And there's also no intra-circuit split because as this court recently reaffirmed in Ockel, Knight and its progeny firmly established the constitutionality of exclusive representation. In any event, Hill was correctly decided. It followed Knight. Neither the Plants and Hill nor Bennett here has identified any meaningful difference between the exclusive representation statute in Knight and the one at issue here. And so this court should adhere to Hill both because there's no basis for overruling it and it was correct in any event. So unless Your Honors have any further questions, I would ask that you affirm the dismissal of count two. Thank you very much. Mr. Schwab. Thank you, Your Honor. First, I want to address Mr. Carabell's argument about this being an issue of just an issue of a contract between the union and Ms. Bennett. I think this is the issue that is confusing many courts and that is this case isn't about the contract that Ms. Bennett signed with the union. This lawsuit and Janus is about the system that the state mandates and that the school district implemented by collective bargaining agreement with the union, whereby the union as the exclusive representative gives the names of its members to the school district and the school district withholds dues from those members and gives that money to the union. That's the issue that Janus addresses when it talks about waiving the right. You have a right not to be compelled by the government to have them take your money and give them to another private organization. Now, the issue is, and this is why I think the contract issue is wrong, the issue is whether the contract that Janus or that Bennett signed in the dues deduction authorization, whether that constitutes waiver under the Janus analysis. And maybe it does, but the reason that I think it doesn't here is for the reasons that I gave. She couldn't have known that she had a right at the time she signed it. She didn't have the right not to pay, not to have her employer, she did not have a right to not have her employer take out money on behalf of the union. That's what we're talking about here. That's where the state action comes from. There's a law that says that the school district has to withhold money on behalf of the union for its members. That's the issue. The issue is not whether or not Ms. Bennett signed the union card or whether she's obligated as a member under the union. The question is whether this scheme that the government has set up to withhold dues on behalf of a private organization without Ms. Bennett's consent is constitutional. Now, again, she did not consent because at the time she could not have decided whether, she could not have decided not to give money to the union, even if she didn't join. And I think that's the issue. And I think that's why the courts have gone there wrong. The issue is about the government, not about her joining the union. And that actually- Mr. Schwab, isn't the state action here solely ministerial? No, it's the same state action that this court said was in Janus too. It's a state law that requires the school district to withhold dues from the union. And we talk about the private organizations. There's no private organization that has, other than the unions, that have a state law that says that the government has to withhold money on their behalf for their members. You can't- if I wanted to have my government employer take out money for the NRA or for the NRA, they're not going to do that unless they have some agreement. There's no agreement. There's no other organization like that. And that's where the state action comes from. We're not talking about the contract she signed with the union. We're talking about the law that requires the school district to withhold money from her paycheck. I see my time's just about up, I'll answer any questions and wrap up. All right. Thank you very much. Our thanks to all counsel. The case is taken under advice.